# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE CAMPBELL, ) | |
| Movant, ) | |
| ) | Case No. 09 C 7216 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION & ORDER

George Campbell ("Mr. Campbell") moves to vacate his sentence and conviction pursuant to 28 U.S.C. § 2255. Mr. Campbell claims that his trial counsel provided ineffective assistance. For the reasons stated herein, the court denies Mr. Campbell's motion for a writ of *habeas corpus*.

### I. BACKGROUND

The factual background surrounding the underlying convictions that Mr. Campbell attacks is set forth in *United States v. Campbell*, 534 F.3d 599 (7th Cir. 2008).

In 2004, the government obtained court authorization to intercept telephone conversations between Raul Montenegro and Mr. Campbell and between Montenegro and Miguel Diaz. On July 7, 2004, Montenegro called Mr. Campbell to arrange for the sale of one kilogram of cocaine, using coded language to refer to the drugs and the terms and conditions of the sale. On July 8, 2004, after speaking with Diaz, who was to supply the cocaine, Montenegro confirmed the details of the transaction with Mr. Campbell and arranged to meet him at Mr. Campbell's residence.

Later that day, Montenegro called Mr. Campbell to inform him that he would soon be at his residence. Mr. Campbell told Montenegro that he would be home soon, and that he would arrange for someone to let Montenegro into his home. The deal, however, unraveled at that point. When Mr. Campbell arrived at his residence, he noticed an unfamiliar vehicle in a nearby parking lot and became suspicious that Montenegro had been followed. Mr. Campbell went inside his residence where Montenegro was playing cards with Mr. Campbell's son. Rather than discuss the transaction, Mr. Campbell immediately pointed out the unfamiliar vehicle to Montenegro, who could not identify it.

Montenegro's response did not alleviate Mr. Campbell's concern, and Mr. Campbell left his residence with Montenegro to get a closer look at the vehicle. Montenegro continued to deny having knowledge of the unfamiliar vehicle. Despite Montenegro's denials, Mr. Campbell was not satisfied that Montenegro had not been followed. Consequently, Mr. Campbell left the area rather than return to his residence to complete the transaction.

After Mr. Campbell left, a Drug Enforcement Agency ("DEA") Agent followed him. Upon realizing he was being followed, Mr. Campbell called Montenegro and instructed him to leave. Mr. Campbell and Montenegro did not discuss the cocaine that Mr. Campbell had intended to purchase.

The next day, Montenegro called Diaz several times to discuss the aborted drug transaction. When Diaz inquired about the cocaine, Montenegro could not confirm the sale because he had not spoken to Mr. Campbell since parting from him. Eventually, Montenegro called Mr. Campbell and asked for a definitive answer concerning his intent to purchase the cocaine. Mr. Campbell called off the transaction.

The next day a DEA agent who had been conducting surveillance at Mr. Campbell's residence discovered a cereal box wrapped in clear plastic in a dumpster near Mr. Campbell's residence. Inside the cereal box was approximately one kilogram of cocaine. Several days later, government agents searched Mr. Campbell's mother's residence and recovered a firearm.

Mr. Campbell was arrested and charged with one count of possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), four counts of using a telephone in the commission of a felony drug offense, in violation of 21 U.S.C. § 843(b), and one count of being a felon in possession of a firearm, in violation of 21 U.S.C. § 922(g)(1).

Prior to trial, Mr. Campbell's trial counsel made several motions in limine. Trial counsel successfully moved to exclude wiretap evidence of the conversations between Mr. Campbell and Montenegro made after Mr. Campbell declined to continue with the transaction. In addition, trial counsel successfully moved to exclude evidence of the firearm recovered from Mr. Campbell's mother's residence.

During Mr. Campbell's trial, the government relied on the recordings of conversations between Montenegro and Mr. Campbell. In addition, government agents testified about their surveillance of Mr. Campbell's residence. Other government agents

provided explanations of the coded language used by Montenegro and Mr. Campbell to arrange the sale. Finally, Montenegro, who had accepted a plea agreement, testified about the events leading to Mr. Campbell's arrest. Montenegro testified that when he first arrived at Mr. Campbell's residence he left the cocaine on a couch or table. He further testified that he never gave Mr. Campbell the cocaine, but that he left it at the residence.[1] Montenegro made clear that he and Mr. Campbell never discussed the cocaine purchase while at Mr. Campbell's residence because of their suspicion that Montenegro might have been followed. Finally, a government agent testified about the practice of "fronting" quantities drugs to distributors and receiving payment after the drugs have been resold.

Trial counsel cross-examined only two of the six government witnesses, Montenegro and an agent who participated in the surveillance of Mr. Campbell's residence. Trial counsel emphasized Montenegro's admission that he had never directly given the cocaine to Mr. Campbell and his admission that he and Mr. Campbell were together only briefly at Mr. Campbell's residence.

At the conclusion of the government's evidence, Mr. Campbell's trial counsel moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. The court reserved ruling on that motion. Mr. Campbell's trial counsel then rested. During closing, Mr. Campbell's trial counsel argued that Mr. Campbell never intended to possess or distribute the cocaine. First, Mr. Campbell's trial counsel drew the jury's attention to Montenegro's testimony that he had never given the cocaine directly to Mr. Campbell

---

[1] Montenegro did not testify that he left the cocaine at Mr. Campbell's residence because he believed that Mr. Campbell intended to purchase it, but because he, like Mr. Campbell, believed that someone had followed him—either the police who might arrest him or another drug dealer who might rob him. (Tr. 142-43).

4

and that he had left the cocaine on a table or couch at Mr. Campbell's residence. He further drew the jury's attention to the government agent's testimony that Mr. Campbell's fingerprints were not found on the package containing the cocaine. Trial counsel argued that these facts demonstrated that Mr. Campbell never possessed the cocaine. Next, trial counsel pointed out that during the entirety of Mr. Campbell's interaction with Montenegro within his residence, Mr. Campbell distanced himself from the transaction. Trial counsel also pointed out that when Montenegro called Mr. Campbell the next day, Mr. Campbell unequivocally repudiated the transaction. Trial counsel argued that these facts not only demonstrated that Mr. Campbell never intended to possess the drugs, but also that even if he did constructively possess the drugs, he did not intend to distribute them.

The jury rejected Mr. Campbell's arguments and concluded that he intended to possess and distribute the cocaine. Trial counsel renewed the motion for judgment of acquittal and further moved for a new trial. Trial counsel challenged the sufficiency of the evidence as to possession and intent to distribute and further argued that Mr. Campbell's possession, even if proven, and intent were not simultaneous. The court rejected both motions and sentenced Mr. Campbell to concurrent sentences of 120 months' imprisonment for the violation of 21 U.S.C. § 841(a)(1) and 48 months' imprisonment for the violations of 21 U.S.C. § 843(b).

Mr. Campbell appealed, challenging the sufficiency of the evidence with regard only to possession.[2] The appellate court denied Mr. Campbell's appeal on July 15, 2008.

---

[2] In a lengthy footnote, the appellate court suggested that the better argument on appeal would have been to challenge whether there was sufficient evidence for a jury to conclude that Mr. Campbell intended to distribute the cocaine at the same time that he possessed it. *Campbell*, 534 F.3d at 604 n.3. Ultimately, the appellate court concluded in *dicta* that this argument would have been without merit.

The appellate court denied Mr. Campbell's petition for rehearing and rehearing *en banc* on August 19, 2008. Mr. Campbell elected not to petition the Supreme Court for a writ of *certiorari*, and the period for doing so expired on November 17, 2008. Mr. Campbell delivered this motion for relief under 28 U.S.C. § 2255 to prison authorities for mailing on November 13, 2009, less than one year after the expiration of time to file a petition for a writ of *certiorari*. The motion is therefore timely under 28 U.S.C. § 2255(f)(1). *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008); *Ingram v. Jones*, 507 F.3d 640, 642 (7th Cir. 2007) (noting that where inmate uses prison legal mailing system, documents deemed filed when delivered to prison authorities for mailing).

## II. STANDARD OF REVIEW

Mr. Campbell challenges his detention pursuant to 28 U.S.C. § 2255. Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). The federal *habeas corpus* statute provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.
> 28 U.S.C. § 2255.

A district court may dismiss a 2255 motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In order to allege facts sufficient to receive an evidentiary hearing, a movant must submit a sworn affidavit with specific

facts supporting the movant's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 7th Cir. 2006). The affidavit must be detailed and specific. Vague, conclusory or palpably incredible assertions are insufficient. *Id.* A district court may consider all the circumstances in the record in determining whether to grant a movant an evidentiary hearing. *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005).

### III. ANALYSIS

Mr. Campbell raises three claims that his trial counsel was ineffective. First, he claims his trial counsel did not conduct an adequate investigation. Second, he claims that his trial counsel failed to conduct adequate cross-examination of the government's witnesses. Third, he claims that trial counsel did not provide adequate assistance because he did not enter any evidence in the defendant's case-in-chief.

To prevail on an ineffective-assistance-of-counsel claim, a movant must demonstrate that his counsel's performance was objectively unreasonable and resulted in a substantial risk of prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010). Failure to establish either prong is fatal to a petitioner's claim. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010). Review of counsel's performance is highly deferential, and counsel is presumed to have acted effectively. *Hutchings*, 618 F.3d at 696. A court's review of counsel's competency must be deferential "[t]o reflect the wide range of competent legal strategies and avoid the pitfalls of review in hindsight." *Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011). In order to demonstrate that counsel's performance was deficient, a movant must provide evidence to overcome the

presumption that trial counsel exercised sound reason for a strategic decision. *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009).

### A. *Failure to Investigate*

Mr. Campbell claims that his trial counsel did not conduct an adequate investigation into the facts surrounding his arrest. Mr. Campbell provides little in the way of explanation about precisely what his trial counsel should have investigated. Rather, he states that trial counsel "failed to adequately consult with [him] or investigate the facts necessary for an adequate defense." He also claims that trial counsel failed to question "key witnesses." As a result, Mr. Campbell argues that trial counsel "did not understand the facts of the case."

When a movant claims that his trial counsel's failure to investigate resulted in ineffective assistance, he has the burden of providing specific information regarding what information additional investigation would have produced. *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011); *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Generalized claims that additional testimony would have made a difference are not sufficient to satisfy a movant's burden. *Lathrop*, 634 F.3d at 939.

Mr. Campbell fails to satisfy his burden of pointing to specific information that his trial counsel should have discovered that likely would have impacted the outcome of his trial. Instead, he raises only generalized claims that his trial counsel did not adequately consult with him. This claim, however, is directly contradicted by Mr. Campbell's affidavit, in which he states that he conferred with trial counsel at least six times. Mr. Campbell's claim that trial counsel failed to question "key witnesses" is similarly vague. Although he claims that trial counsel did not question "key witnesses,"

he fails to identify the nature of those witnesses' potential testimony and further fails even to name those witnesses.

Finally, Mr. Campbell's assertion that trial counsel "did not understand the facts of the case" is simply inaccurate. In his motion, Mr. Campbell submits an affidavit in which he provides a narrative of the events concerning the aborted drug transaction. Mr. Campbell's account mirrors the testimony of Montenegro at trial. Mr. Campbell states that Montenegro contacted him about a drug transaction and that he arranged to meet Montenegro at his residence. Mr. Campbell states that he withdrew from the transaction because he observed unfamiliar cars in the parking lot near his residence. Finally, Mr. Campbell states that he and Montenegro were together only briefly. In short, Mr. Campbell implies in the affidavit that the evidence was insufficient to demonstrate that he constructively possessed the cocaine because he withdrew from the transaction.

Despite Mr. Campbell's assertion that his trial counsel did not understand his version of events, trial counsel put forth precisely the same argument at trial. Trial counsel embraced Montenegro's testimony during his closing argument because it supported the argument Mr. Campbell raises here --- that Mr. Campbell never possessed the cocaine because the transaction was aborted. In fact, trial counsel went one step further and argued that even if the jury were to conclude that Mr. Campbell constructively possessed the cocaine he had no intent to distribute it at that time because of his concern that Montenegro had been followed. Contrary to Mr. Campbell's argument, trial counsel clearly understood his version of events and presented that version to the jury.

Mr. Campbell provides only generalized speculation that trial counsel should have been more thorough in his investigation. He presents no specific information about what further investigation might have revealed that would have been helpful to his defense and his claim that trial counsel was ineffective because he conducted an inadequate investigation is without merit.

*B. Ineffective Cross Examinations*

Mr. Campbell next claims his trial counsel did not adequately cross-examine the government's witnesses. Mr. Campbell claims that trial counsel could have elicited exculpatory information with more thorough cross-examinations. Specifically, Mr. Campbell claims trial counsel could have elicited that: (1) DEA agents never witnessed him in possession of drugs and did not find drugs on his person when they arrested him; (2) the government agent who testified about the recorded conversations between Montenegro and Mr. Campbell was not an expert on drug code language; (3) a government agent planted the cocaine in the dumpster; (4) DEA agents did not witness him placing the cocaine in the dumpster; (5) Montenegro reported to Diaz that no purchase had taken place; and (6) Montenegro lacked credibility.

Mr. Campbell bears a heavy burden to demonstrate that his attorney was ineffective in conducting inadequate cross-examinations of the government's witnesses. A movant questioning his trial counsel's decision not to cross-examine a particular line of witness must demonstrate that trial counsel had no reasonable basis for that strategy. *Li*, 648 F.3d at 531; *Menzer v. United States*, 200 F.3d 1000, 1004 (7th Cir. 2004). In addition, the decision regarding which questions to ask a government witness is almost always a matter of trial strategy. *United States v. Jackson*, 546 F.3d 801, 814 (7th Cir.

2008). Even if a movant can demonstrate that trial counsel's cross-examination was deficient, the movant must provide specific information about the nature of the responses to further cross-examination and how those responses might have resulted in an acquittal. *Jackson*, 546 F.3d at 814; *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995). Mr. Campbell has provided no such information and his claim is without merit.

Several of Mr. Campbell's claims rest upon nothing more than his speculation. For example, Mr. Campbell offers no evidence and makes no argument that the government agent who testified about the coded language in drug transactions was not, in fact, an expert. Instead, he merely speculates that cross-examination would have convinced the court that he was not an expert. However, the agent who testified about coded language in drug transactions testified at length about his experience, which included over ten years experience as a task force agent to the DEA. Similarly, Mr. Campbell complains that trial counsel should have asked more questions when cross examining the government agent who discovered the drugs in the dumpster. Mr. Campbell hypothesizes that "it is well known that law enforcement is not above planting evidence and concocting stories in order to secure a conviction." Mr. Campbell's hypothesis that government agents planted the cocaine in the dumpster is pure speculation. Palpably incredible assertions are not sufficient to warrant an evidentiary hearing, and without something beyond Mr. Campbell's speculation, he is not entitled to an evidentiary hearing on his claims. *Kafo*, 467 F.3d at 1067.

In addition, several avenues of cross-examination proposed by Mr. Campbell would have elicited only cumulative or collateral testimony. A failure to cross-examine a witness on collateral or inconsequential issues, however, does not constitute ineffective

assistance of counsel. *Menzer*, 200 F.3d at 1004; *Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir. 1995). Mr. Campbell claims that cross-examinations of the agents who conducted surveillance would have revealed that none of the agents ever witnessed him in possession of the drugs or witnessed him placing the drugs in the dumpster. Similarly, Mr. Campbell suggests that had trial counsel cross-examined Montenegro more thoroughly he would have confirmed that Mr. Campbell withdrew from the drug transaction. None of these facts, however, were in dispute. No government agent ever testified that he witnessed Mr. Campbell possessing drugs or placing the drugs in the dumpster. More importantly, all of the evidence that had been adduced on direct examination points to the fact that Mr. Campbell did not actually possess the drugs: (1) Montenegro testified that he left the drugs at Mr. Campbell's residence and that Mr. Campbell left shortly thereafter; (2) Montenegro testified that Mr. Campbell informed him that he no longer wished to purchase the drugs the day after the failed transaction; (3) the government did not find Mr. Campbell's fingerprints on the drugs it found in the dumpster. Thus, the testimony Mr. Campbell claims his trial counsel should have elicited from the government agents and Montenegro concerning his withdrawal from the transaction would have been cumulative.

In addition, the testimony Mr. Campbell claims his trial counsel should have elicited touched upon collateral matters. The government's theory of the case was that Mr. Campbell *constructively* possessed the drugs, which required proof that he had "the power and intent to exercise control" over the drugs. *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008) (internal quotation marks and citations omitted). This required the government to demonstrate that Mr. Campbell had some authority to possess and

determine the disposition of the drugs. *United States v. Windom*, 19 F.3d 1190, 1200 (7th Cir. 1994). Thus, whether Mr. Campbell actually possessed the drugs was not relevant to the determination that Mr. Campbell constructively possessed the drugs.

Finally, Mr. Campbell argues that trial counsel should have attacked Montenegro's credibility. This argument makes little sense because Montenegro's testimony supported Mr. Campbell's theory of the case. Montenegro testified that he never gave the cocaine directly to Mr. Campbell. He further testified that Mr. Campbell left the residence shortly after arriving and never completed the drug transaction. Finally, he testified that the day after the failed transaction, Mr. Campbell rejected any offer to complete the transaction. Prior to Montenegro's cross-examination, the government attempted to impeach him with the answers he gave during his plea colloquy, indicating that it believed Montenegro's testimony at trial had damaged its case.

Trial counsel argued, as Mr. Campbell does in this motion, that Mr. Campbell withdrew from the drug transaction and thus never constructively possessed the cocaine. In support of that argument, Mr. Campbell's trial counsel informed the jury that he embraced, rather than disputed, Montenegro's testimony and pointed out that the government attempted to distance itself from it. Instead of arguing that Montenegro was not credible, Mr. Campbell's trial counsel argued that Montenegro's testimony supported a finding that Mr. Campbell never possessed the cocaine. In addition, trial counsel argued that even if Mr. Campbell constructively possessed the cocaine, he lacked the intent to distribute it at the time because he began to repudiate the transaction upon entering his residence.

In other words, trial counsel articulated a strategic reason for his decision not to attack Montenegro's credibility. Where trial counsel has articulated a strategic reason for a decision that was sound at the time it was made, the decision cannot generally serve as the basis for an ineffective assistance of counsel claim. *Lathrop*, 634 F.3d at 937. Mr. Campbell offers no reason why trial counsel's decision was not sound. Nor could he, for it was a reasonable strategy. In fact, the appellate court recognized the viability of trial counsel's theory, suggesting that "[t]here is an argument that the Government's proof with respect to intent was lacking because it (arguably) did not establish that Mr. Campbell intended to distribute the cocaine *at the same time* that he possessed it." *Campbell*, 534 F.3d at 604 n.3 (emphasis in original).

*C. Failure to Put On Evidence in Case-in-Chief*

Mr. Campbell's final claim is that trial counsel provided ineffective assistance because he did not put on any evidence during a case-in-chief. Mr. Campbell argues that trial counsel should have called his six-year-old son, his fiancé, and his mother. Mr. Campbell offers no evidence about the nature of these witnesses' testimony. A generalized claim that additional testimony would have made a difference in the outcome of the case is not sufficient to satisfy a movant's burden in a *habeas* motion. *Lathrop*, 634 F.3d at 939. In order to overcome the presumption that trial counsel exercised sound reason for the strategic decision not to call these witnesses, Mr. Campbell must put forward evidence to demonstrate that their testimony likely would have altered the outcome of his trial. *Id.*, 634 F.3d at 939 (holding that *habeas* petitioner must provide specific information about the nature of the testimony that counsel should have discovered and presented); *United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir. 2002)

(holding that when defendant claims counsel was ineffective in failing to investigate and call witnesses, defendant must provide specific information regarding the nature and probable effect of the testimony that would have been obtained).

Mr. Campbell speculates that trial counsel could have asked the witnesses who lived at his residence, where they were employed, whether they had met Montenegro, how long Mr. Campbell met with Montenegro, and other similar questions. Many of the questions are collateral. Mr. Campbell, however, offers no explanation why testimony about the living arrangements in his residence would have made a difference in the outcome of his trial. Because Mr. Campbell has produced no specific evidence about the nature and probable result of these witnesses' testimony, his claim that his trial counsel provided ineffective assistance necessarily fails.

In an effort to demonstrate that he was prejudiced by his trial counsel's failure to call witnesses, Mr. Campbell argues that his trial counsel all but admitted his guilt in closing. Mr. Campbell focuses on his trial counsel's statement to the jury that "you didn't hear much from me." (Tr. 288). Mr. Campbell suggests the statement demonstrates that his counsel threw in the towel.

To the contrary, however, trial counsel's statement reveals his strategy. Trial counsel argued that the government had not met its burden to prove that Mr. Campbell ever intended to exercise dominion over the cocaine or, in the alternative, that Mr. Campbell lacked the intent to distribute the cocaine when he possessed it. Trial counsel emphasized Montenegro's testimony, including his admission that Mr. Campbell was immediately suspicious of the surveillance vehicles, never completed the drug transaction, and left shortly after arriving. Trial counsel attacked the government's

15

theory that Montenegro had fronted the drugs to Mr. Campbell, noting that Montenegro testified that after the failed transaction he had asked Mr. Campbell whether he wanted to complete the transaction and Mr. Campbell declined. As noted earlier, the appellate court recognized these arguments as sound trial strategy. In any event, Mr. Campbell offers no explanation why trial counsel's strategy was not sound, and his claim is without merit. *See Lathrop*, 634 F.3d at 937 (noting that if counsel's strategic decision was sound at the time, the decision will not support a claim of ineffective assistance).

## IV. CONCLUSION

None of Mr. Campbell's ineffective assistance claims have merit. Consequently, the court DENIES his motion for a writ of *habeas corpus*. Pursuant to 28 U.S.C. § 2253, the Court must determine whether to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The court may issue such a certificate only if the applicant has made a substantial showing of the denial of a constitutional claim. 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

No reasonable jurist could debate the merits of Mr. Campbell's claims. He fails to meet his burden of providing specific information about his trial counsel's failure to conduct an adequate investigation or present a case-in-chief. In addition, many of Mr. Campbell's proposed lines of cross-examination rest entirely on speculation. Those that do not would have, at best, produced only cumulative testimony and, at worst, directly

undermined the theory of defense presented at trial (and that Mr. Campbell echoes in this motion). The court therefore declines to issue a certificate of appealability.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 18, 2012